UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| **ANNA E. RALPHS, formerly known as ANNA E. JUERGENS** Individually and On Behalf of All Others Similarly Situated,<br><br>PLAINTIFF,<br><br>vs.<br><br>**CHARTER COMMUNICATIONS, INC.**<br><br>and<br><br>**CHARTER COMMUNICATIONS ENTERTAINMENT I, LLC**<br><br>DEFENDANTS. | **CASE NO. 4:15-cv-00711**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

**COMES NOW**, Plaintiff Anna E. Ralphs, formerly known as Anna E. Juergens (hereinafter, "Plaintiff"), individually and on behalf of all others similarly situated (the "Class" and "Subclass" as defined below), upon personal knowledge as to the facts pertaining to herself, upon information and belief as to all other matters, and based on the investigation of counsel, brings this class action against Defendants Charter Communications, Inc. and Charter Communications Entertainment I, LLC (hereinafter, referred to as "Defendants" or "Charter"), seeking damages and other relief seeking class-wide recovery of damages, restitution, and other relief against Defendants, and alleges as follows:

## NATURE OF THE ACTION

1. Charter Communications, Inc., is a Fortune 500 company and the fourth-largest cable operator in the United States. Charter is in the business of providing cable television, Internet, and telephone services to residential and business customers in the state of Missouri,

1

North Carolina, and South Carolina.  See, http://www.charter.com/about.

1. Floyd Mayweather, Jr. vs. Manny Pacquiao, billed as *The Fight of the Century*, Battle for Greatness or Legacy, was a professional boxing match between the eight-division world champion Manny Pacquiao and undefeated, five-division world champion Floyd Mayweather, Jr.

2. The fight between WBC and WBA Super Welterweight Champion Floyd Mayweather vs. WBO Welterweight Champion Manny Pacquiao took place on May 2, 2015 at the MGM Grand Garden Arena in Las Vegas, Nevada.

3. Charter advertised the following Pay-Per-View program to Plaintiff and the Class and Subclass Members follows, hereinafter referred to as the "Fight Package":

"Floyd Mayweather Jr vs. Manny Pacquiao

Live on Pay-Per-View  $99.99

Saturday, May 2, 2015 - Main Event 9:00 p.m. ET / 6:00 p.m. PT

Witness one of the most anticipated sporting events in recent history as pound for pound king Floyd Mayweather puts his legacy on the line to face eight-division world champion Manny Pacquiao live from the MGM Grand Arena. Full coverage begins at 6:00 p.m. ET / 3:00 p.m. PT.

See: https://www.myaccount.charter.com/customers/support.aspx?supportarticleid=3399

4. The Fight Package included the following Pay-Per-View Under Card:  126 lbs.: WBC Super Bantamweight World Champion Leo "El Terremoto" Santa Cruz (29-0-1, 17 KOs) vs. Jose Cayetano (17-3, 8 KOs) and 126 lbs.: WBO Featherweight Champion Vasyl Lomachenko (3-1, 1 KO) vs. Gamalier Rodriguez (25-2-3, 17 KOs)

5. Despite the fact that Charter cable customers paid for the Fight Package, Plaintiff and the Class and Subclass Members were unable to watch the Pay-Per-View fights until, at best, the end of the fourth round of the Floyd Mayweather and Manny Pacquiao fight, missing entirely the two Under Card Fights, the pageantry of how Floyd Mayweather and Manny Pacquiao entered

2

the ring, introductions, the National Anthem performed by Jamie Foxx, and pre-fight commentary. At worst, some viewers were unable to view the entire Program.

6.     Cable customers in St. Louis took to social media Saturday night to fume about a cable outage that prevented them from watching most of the highly anticipated pay-per-view boxing title fight between Floyd Mayweather and Manny Pacquiao.

7.     According to the St. Louis Post-Dispatch, "[a] website showing outages from Charter Communications across the country at 9:20 p.m. highlighted St. Louis; Asheville, N.C.; and parts of South Carolina as the most-impacted regions. It still was that way at 11:15 p.m., when the bout that Mayweather won via unanimous decision was underway.[1]" Channels in addition to the pay-per-view outlet were affected in some locations, and some service was restored about 11:30 p.m., well into the fight. *Id.*

8.     Class and Subclass members were outraged by their inability to watch the fight that they had paid for:

> "Charter ruining the night in St. Louis," @PicksByShap wrote on twitter, adding: "Try to name a more unreliable, overpriced cable company. You can't."
>
> Injured Cardinals pitching ace Adam Wainwright, @UncleCharlie50, tweeted, "Thanks for nothing @CharterCom!"
>
> Blues broadcaster Kelly Chase tweeted, "Maybe @CharterCom knew something after all and tried not to subject us to 12 full rounds of that."
>
> See: http://www.stltoday.com/news/local/cable-outage-in-st-louis-as-mayweather-fight-nears/article_f53b152c-b42b-5938-bf77-40bb1373e5fa.html

9.     Calls to Charter's customer service phone number, 1-888-438-2427 were met with a busy signal throughout the evening.

---

[1] Available at: http://www.stltoday.com/news/local/cable-outage-in-st-louis-as-mayweather-fight-nears/article_f53b152c-b42b-5938-bf77-40bb1373e5fa.html

3

10. On Twitter at 8:30 p.m., @CharterCom tweeted: "We are aware of the issue impacting the Mayweather vs. Pacquiao feed. We are working to resolve as soon as possible."

11. At 9:49 p.m. Charter tweeted, "We are continuing to experience issues impacting TV service and are working to restore service as quickly as possible."

12. During the night of May 2, 2015, Charter failed to provide its customers with the Fight Package it promised to Plaintiff and the Class and Subclass Members and that Plaintiff and the Class and Subclass Members paid for.

13. During the service outage, Charter continued to accept payment and charge customers for the fight package.

14. Charter was aware of the location of the service outage and still charged the Class and Subclass Members full price for the May 2, 2015 fight package.

## PARTIES

15. Plaintiff Anna E. Ralphs, formerly known as Anna E. Juergens ("Plaintiff"), a citizen of the state of Missouri, is a Charter customer who paid Defendants approximately $99.99 for the Floyd Mayweather Jr vs. Manny Pacquiao Live on Pay-Per-View full coverage fight package (the "Fight Package" or "Program") and suffered a service outage, which resulted in loss of the ability to view the Program.

16. Charter Communications, Inc. is a Delaware corporation with its principal place of business in Connecticut.

17. Charter Communications Entertainment I, LLC, is a Delaware corporation with its principal place of business in Connecticut.

## JURISDICTION AND VENUE

18. This Court has subject matter jurisdiction over this matter pursuant to the Class

Action Fairness Act, 28 U.S.C. § 1332(d)(2) and (6), in that:

    a. the matter in controversy exceeds $5,000,000.00, exclusive of interest and costs;

    b. this is a class action involving 100 or more class members; and

    c. this is a class action in which at least one member of the Plaintiff class and subclass is a citizen of a State different from at least one Defendants.

19. This Court has personal jurisdiction over Defendants because Defendants are authorized to do business in the State of Missouri and operates within this Judicial District.

20. Venue is proper in this Court pursuant to 28 U.S.C. §1391 because many of the acts and transactions giving rise to this action occurred in this District and because Defendants are subject to personal jurisdiction in this District.

21. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391, because a substantial part of the events and/or omissions giving rise to Plaintiffs' and the Class and Subclass Members' claims occurred within this District and Defendants conduct substantial business in this District.

## CLASS ALLEGATIONS

22. **Class Definition**: Plaintiff brings this action pursuant to Fed.R.Civ.P. 23, on behalf of Plaintiff's self and a Class of similarly situated persons and entities and a Missouri subclass of individuals, defined as follows:

> All persons and entities who paid Defendants for the Floyd Mayweather Jr vs. Manny Pacquiao Live on Pay-Per-View full coverage fight package and suffered a service outage.
>
> The Missouri Individual Subclass: All persons in Missouri who paid Defendants for the Floyd Mayweather Jr vs. Manny Pacquiao Live on Pay-Per-View full coverage fight package and suffered a service outage.
>
> Excluded from the Class and Subclass are: (1) Defendants, Defendants' agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendants or Defendants' parents have a

controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Class; (4) any person who has had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

23. **Numerosity:** The Class consists of hundreds, if not thousands, of individuals and other entities, making joinder impractical. The exact size of the respective class and the identities of the individual members thereof are ascertainable through Defendant's records, including but not limited to its billing and account records.

24. **Typicality.** The claims of Plaintiff are typical of the claims of the respective Class. The claims of the Plaintiff and the respective Class are based on the same legal theories and arise from the same unlawful and willful conduct, resulting in the same injury to the Plaintiff and the respective Class.

1. **Superiority.** The class action is the best available method for the efficient adjudication of this litigation because individual litigation of Class and Subclass Members' claims would be impracticable and individual litigation would be unduly burdensome to the courts. Plaintiffs and members of the Class and Subclass have suffered irreparable harm as a result of Defendants' bad faith, fraudulent, deceitful, unlawful, and unfair conduct.  Because of the size of the individual Class and Subclass members' claims, no Class members could afford to seek legal redress for the wrongs identified in this Complaint.  Without the class action vehicle, the Class and Subclass would have no reasonable remedy and would continue to suffer losses, as Defendants continue to engage in the bad faith, unlawful, unfair, and deceptive conduct that is the subject of this Complaint, and Defendants would be permitted to retain the proceeds of their violations of law.  Further, individual litigation has the potential to result in inconsistent or contradictory

judgments.  A class action in this case presents fewer management problems and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.  Absent a class action, most of the respective class members would find the cost of litigating their claims to be prohibitive, and will have no effective remedy.  The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy.  The litigation without a class would allow litigation claims that, in view of the expense of the litigation, may be insufficient in amount to support separate actions.  Lastly, the prosecution of separate actions by individual members of the class would create a risk of:

    a.    Inconsistent or varying adjudications with respect to individual members of the respective class which would establish incompatible standards of conduct for the party opposing the respective class; and

    b.    Adjudications with respect to individual members of the respective class which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

25.    **Commonality and Predominance:** There are several questions of law and fact common to the claims of Plaintiff and the Class and Subclass Members. All of the Class and Subclass Members' claims are based upon the same facts and circumstances. Those common questions predominate over any questions that may affect individual Class and Subclass Members.  Common questions include, but are not limited to, the following:

    a.    Whether Defendants' conduct described herein is in breach of contract;

    b.    Whether Defendants' conduct as described herein violates Missouri's Merchandising Practices Act, Mo. Rev. Stat. Section 407.010, *et seq.* or other relevant states' consumer protection acts;

    c.    Whether Defendant omitted that Defendants had insufficient network capacity to handle the Pay-Per-View service traffic for full coverage of the Fight Package;

    d.    Whether Defendants promised Class Members it would provide viewing of the Fight Package if one paid the fee associated with the Fight Package;

    e.    Whether Defendants misrepresented that Defendants would provide the Fight Package if one paid the fee associated with the Fight Package;

    f.    Whether Defendant failed to disable the ability to purchase the Fight Package during the outage period;

    g.    Whether Defendants allowed one to purchase the Fight Package during the outage period;

    h.    Whether Defendants materially omitted that Defendants would not provide full coverage of the Fight Package;

    i.    Whether Defendants concealed the fact of the outage until after one had purchased the Fight Package; and

    j.    Whether Defendants continued to accept payments during the outage period.

    k.    Whether Plaintiff and Class and Subclass Members are entitled to damages;

    l.    Whether Plaintiff and Class and Subclass Members are entitled to punitive damages;

    m.    Whether Plaintiff and Class and Subclass a Members are entitled to treble damages;

    n.    Whether Plaintiff and Class and Subclass Members are entitled to attorneys' fees; and

    o.    Whether Plaintiff and Class and Subclass Members are entitled to costs.

26.    **Adequacy**: Plaintiff will fairly and adequately represent and protect the interests of the members of the respective class and subclass.  Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions.  Plaintiff and Plaintiff's counsel are committed to vigorously prosecuting this action on behalf of the other respective class and subclass members, and have the financial resources to do so.  Neither Plaintiff nor Plaintiff's

counsel have any interest adverse to those of the other respective class members.

## COUNT I
## Breach of Contract
### (On behalf of Plaintiff and the Class and Subclass)

COMES NOW Plaintiff, individually and on behalf of all others similarly situated, and for this Count of Plaintiff's Class Action Complaint against Defendants, states the following:

27. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

28. Plaintiff and Class and Subclass Members entered into valid and enforceable contracts with Defendants whereby Defendants promised to provide services to Plaintiff and Class and Subclass Members in the form of full coverage for the May 2, 2015 fights broadcast on Defendants Pay-Per-View channel, and Plaintiff and Class and Subclass Members agreed to and did pay $99.99 or other amount for that Pay-Per-View service, so they could watch live the May 2, 2015 fights and entertainment taking place at the MGM Grand in Las Vegas, Nevada.

29. Defendants breached the contracts with Plaintiff and Class and Subclass Members by not providing full coverage of the May 2, 2015 fights taking place at the MGM Grand in Las Vegas, Nevada.  In particular, Plaintiff and the Class and Subclass Members suffered a service outage, rendering Plaintiff and the Class and Subclass unable to view the Program from approximately 8:28pm until, at best, the end of the fourth round (and for certain the Class and Subclass members, including Plaintiff, later) of the of the Floyd Mayweather and Manny Pacquiao fight.  As a result, Plaintiff and the Class and Subclass Members missed entirely the two Under Card Fights, the pageantry of how Floyd Mayweather and Manny Pacquiao entered the ring, introductions, and pre-fight commentary.

30. As a result of Defendants' breach, Plaintiff and the Class and Subclass Members

suffered damages in an amount to be proved at trial.

## COUNT II
### MISSOURI MERCHANDISING PRACTICES ACT
Mo. Rev. Stat. §407.010 *et seq*.
(Missouri Subclass only)

COMES NOW Plaintiff, individually and on behalf of all others similarly situated, and for this Count of Plaintiff's Class Action Complaint against Defendants, states the following:

1. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

2. Count II is a class action claim brought pursuant to Section 407.010 *et seq*. R.S.Mo., known as the Merchandising Practices Act.

3. Missouri's Merchandising Practices Act prohibits:

> [t]he act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce.

V.A.M.S. § 407.020.

4. Services, such as the Defendants Pay-Per-View Fight Package services, fall within the meaning of "Merchandise" under R.S.Mo. § 407.020.

5. The Pay-Per-View Fight Package services as described herein were provided by Defendants to Plaintiff and the Subclass primarily for personal, family, or household purposes.

6. Defendants, through its employees, agents, and representatives, have engaged in acts, methods, or practices of deception, fraud, false pretense, false promise, misrepresentation, unfair practice, or the concealment, suppression, or omission of fact in connection with the sale or advertisement of the Fight Package in the following ways:

   a. By materially omitting that Defendants had insufficient network capacity to handle the Pay-Per-View service traffic for full coverage of the Fight Package;

    b.    By falsely promising Plaintiff and the Subclass Members it would provide viewing of the Fight Package if Plaintiff and the Subclass Members paid the fee associated with the Fight Package;

    c.    By misrepresenting that Defendants would provide the Fight Package if Plaintiff and the Subclass Members paid the fee associated with the Fight Package;

    d.    By not disabling the ability to purchase the Fight Package during the outage period;

    e.    By allowing Plaintiff and the Subclass Members to purchase the Fight Package during the outage period;

    f.    By materially omitting that Defendants would not provide full coverage of the Fight Package;

    g.    By concealing the fact of the outage until after Plaintiff and the Subclass Members had purchased the Fight Package; and

    h.    By continuing to accept payments from the Subclass Members during the outage period.

7. As a direct and proximate result of Defendants' deception, fraud, false pretense, misrepresentation, unfair practices, and concealment, Plaintiff and the Subclass members were damaged.

8. Defendants, through its acts of unfair competition, have obtained money from Plaintiff and members of the Subclass.  Plaintiff, in fact, has been injured by Defendant's conduct, as have members of the Subclass.  Plaintiff and the members of the Subclass ask that this Court restore this money to them and enjoin Defendants from continuing its illegal and/or unfair and/or deceptive practices.

9. In bringing this action, Plaintiff has engaged the services of attorneys, and has incurred reasonable legal expenses in an amount to be proved at trial.

10. Pursuant to Section 407.025.1 R.S.Mo., this Court may award attorney's fees to

Plaintiff and the Subclass.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, requests the following relief:

a. That the Court enter an order certifying the Class and appointing Plaintiff as the representative of the respective Class, and appointing counsel for Plaintiff as lead counsel for the respective Class;

b. That the Court enter judgment against Defendant for all economic, monetary, actual, consequential, and compensatory damages caused by its conduct, and if its conduct is proved willful, award Plaintiff and the Class treble and exemplary damages;

c. That the Court award Plaintiff and the respective Class pre- and post-judgment interest; and

d. That the Court award Plaintiff and the respective Class their costs and expenses, as well as reasonable attorneys' fees, in prosecuting this action;

e. That the Court award such other and further relief as may be necessary or appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demands a jury trial of all claims to the extent authorized by law.

Respectfully Submitted,   **CAREY, DANIS & LOWE**

DATED: <u>May 5, 2015</u>   By:   /s/ Francis J. "Casey" Flynn, Jr.
Francis J. "Casey" Flynn, Jr.
*francisflynn@gmail.com*
CAREY, DANIS & LOWE
8235 Forsyth Boulevard, Suite 1100
Saint Louis, Missouri  63105-1643
Telephone: (314) 725-7700
Facsimile: (314) 721-0905

Corey D. Sullivan
*sullivcd@gmail.com*
SULLIVAN LAW, LLC

                    1814 E Eagle Bay Drive
                    Bloomington, Indiana 47401
                    Telephone: (855) 571-3784

                    **ATTORNEYS FOR PLAINTIFF AND THE PROPOSED CLASS**